The Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | NO. CR11-228JLR |
| | ) | |
| Plaintiff, | ) | GOVERNMENT'S RESPONSE TO |
| | ) | DEFENDANT ABDUL-LATIF'S |
| v. | ) | EVIDENTIARY HEARING BRIEF |
| | ) | |
| ABU KHALID ABDUL-LATIF, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## I.    Introduction.

The United States of America, by and through Jenny A. Durkan, United States Attorney for the Western District of Washington, and Todd Greenberg and Michael Dion, Assistant United States Attorneys, files this Response to Defendant Abu Khalid Abdul-Latif's Evidentiary Hearing Brief (Doc. 177).

The defendant moves the Court for an order: (a) compelling the testimony of Assistant United States Attorneys (AUSAs) Todd Greenberg and Michael Dion at the evidentiary hearing scheduled on December 7, 2012; and (b) sequestering witnesses, including AUSAs Greenberg and Dion, pursuant to Federal Rule of Evidence 615.  The relief requested by the defendant would effectively disqualify AUSAs Greenberg and Dion – the only government attorneys handling this complex criminal matter – from representing the government at the evidentiary hearing.

For the reasons set forth below, the Court should deny the defendant's requests. The Court should not require the AUSAs to testify at the hearing because the government is willing to stipulate to the relevant information known to the AUSAs.  The government has made written disclosures to the defense concerning this information, and it took the extraordinary step of making the AUSAs available for extensive interviews by the defense team.  The government is willing to stipulate to all of the facts contained in the lengthy transcripts of the AUSAs' interviews.  As a result, there is simply nothing else that the AUSAs can say about the relevant topics, and there is no reason for the Court to compel the AUSAs to testify at the evidentiary hearing.  Moreover, the defendant does not appear to be challenging the substance of the information provided by the AUSAs, and he is not calling into question the AUSAs' credibility.  Therefore, there is no credibility determination for the Court to make with respect to the AUSAs' testimony.

If the Court denies the defendant's motion to compel the live testimony of AUSAs Greenberg and Dion, then the remaining issue raised by the defendant is moot.  That is, if the AUSAs are not witnesses at the evidentiary hearing, then FRE 615 would not be applicable to them and there is no further issue presented.  In the alternative, if the Court grants the motion to compel the AUSA's testimony, the government requests that the Court exempt the AUSAs from the witness sequestration rule so that the AUSAs, as the government's counsel of record, may be permitted to represent the government at the hearing and present the testimony of the other witnesses.  The Court has discretion to allow this under the governing case law.

## II.   Factual Background.

### A.     The Pending Defense Motions.

The Court has scheduled an evidentiary hearing on December 7, 2012, to address two pending defense motions: Defendant's Motion to Exclude Evidence and Provide a Jury Instruction for Failure to Preserve Exculpatory Evidence (Doc. 96); and Defendant's Motion to Dismiss Indictment Based on Government's Intentional Destruction of Evidence (Doc. 141).  The Motion to Exclude Evidence concerns the conduct of the

RESPONSE TO DEFENDANT'S EVIDENTIARY HEARING BRIEF - 2
*United States v. Abdul-Latif*, No. CR11-228JLR

UNITED STATES ATTORNEY
700 Stewart Avenue, Suite 5220
Seattle, Washington 98101
(206) 553-7970

informant used during the course of the investigation.  The defense moves the Court to exclude certain evidence because the informant "reset" his cellular telephone prior to turning it in to the Federal Bureau of Investigation (FBI) as evidence.  The Motion to Dismiss concerns the actions of Seattle Police Department (SPD) Detective Samuel DeJesus.  The motion requests that the Court dismiss the Indictment in this case because Detective DeJesus failed to preserve numerous text messages between himself and the informant.  The defense argues that Detective DeJesus deleted the text messages in "bad faith."

As set forth below, AUSAs Greenberg and Dion possess information that may be relevant to the issues presented in the Motion to Dismiss (concerning the deletion of text messages by Det. DeJesus), but the AUSAs do not have any such information to provide concerning the Motion to Exclude Evidence (concerning the informant's "reset" of his cell phone).

**B.     The Government's Disclosures Regarding the Deleted Text Messages.**

On July 13, 2012, the government received an email from the defense concerning the possibility that there were numerous text messages between Det. DeJesus and the informant that had not been provided by the government in discovery.  In following-up on this defense inquiry, the government first learned that, in fact, Det. DeJesus had deleted numerous text messages between himself and the informant, and that those text messages were no longer available.

On July 25, 2012, the government sent the defense a letter disclosing the fact that the text messages had been deleted.  Exhibit A at 2.  The July 25th letter contained a detailed account of information provided by Det. DeJesus relating to the deleted text messages.  Exhibit A at 2-3.  Among other things, the July 25th letter disclosed that Det. DeJesus explained that he deleted his text messages with the informant consistent with his routine practice; he did not recall being told to preserve his text messages with the informant; and if he was told to preserve the text messages he may have misunderstood the instruction.  Exhibit A at 2.

RESPONSE TO DEFENDANT'S EVIDENTIARY HEARING BRIEF - 3
*United States v. Abdul-Latif*, No. CR11-228JLR

UNITED STATES ATTORNEY
700 Stewart Avenue, Suite 5220
Seattle, Washington 98101
(206) 553-7970

The attorneys for the government made additional disclosures related to the deleted text messages.  In the July 25th letter, the government disclosed: "[W]ith respect to the preservation of text messages, AUSAs Greenberg and Dion both recall separately telling Det. DeJesus and other officers/agents on the investigation team to preserve their text messages with [the informant]."  Exhibit A at 2.

In a letter dated August 3, 2012, the government provided additional details concerning the discussions between the AUSAs and investigators, including Det. DeJesus, about the need to preserve text messages involving the informant:

> AUSA Greenberg recalls that on the morning of June 6, 2011, he attended a meeting along with several law enforcement officers, including FBI Supervisory Special Agent Sean Moore, Special Agent Via, SPD Sergeant Erik Allen, Detective DeJesus, and possibly Special Agent Kelly.  AUSA Greenberg recalls that, at this meeting, he requested that the investigators preserve all emails and text messages with [the informant].

> AUSA Dion recalls that at a meeting on or about June 9, 2011, he had a brief one-on-one conversation with Detective DeJesus during which he requested that Detective DeJesus preserve all text communications with [the informant].

> We believe there were other instances during the time period of the investigation (June 6, 2011, to June 22, 2011) when the need to preserve text messages was raised with investigators, likely including Detective DeJesus, although neither AUSA Greenberg nor AUSA Dion has a specific recollection of those conversations.

> None of the above interactions were memorialized in writing.  Enclosed are redacted copies of two later email exchanges between AUSA Dion and Detective DeJesus during August and October 2011, concerning the discovery of text messages.

Exhibit B at 2.

## C.     The AUSAs Voluntarily Submitted to Interviews by Defense Counsel.

In its Motion to Dismiss, the defense listed AUSAs Greenberg and Dion as witnesses whom they intended to call at the evidentiary hearing.  In an effort to avoid this, the government offered to stipulate to the contents of the July 25th and August 3rd letters. The defense was reluctant to agree to this arrangement without the opportunity to further explore the facts.  To accommodate the defense, the government took the extraordinary step of offering to make both AUSAs available for interviews by defense counsel.

The interviews took place on October 25, 2012.  AUSA Robert Westinghouse attended the interviews to represent the government's interests.  The government placed no time limits on the interviews, which continued until the defense ran out of questions. In total, the two interviews lasted roughly three hours, and the transcripts run over 120 pages.  The defendant's pleading mis-characterizes the interviews as being limited in scope.  As the Court will see from a review of the transcripts, the AUSAs answered all questions related to the issue of the deleted DeJesus/informant texts, and answered numerous other questions related to additional issues.  There were, of course, times when the government refused to answer certain questions based on the work product privilege or because they were not relevant to the issues raised in the defendant's motions.

The government includes the following brief summaries of the interviews as they pertained to the issue of the AUSAs' contacts with Det. DeJesus and other investigators regarding the need to preserve text messages with the informant.  We have attached for the Court's review the full transcripts of the interviews of AUSA Greenberg (Exhibit C) and AUSA Dion (Exhibit D).  For purposes of the evidentiary hearing, the government is willing to stipulate that the statements made by the AUSAs during their interviews, and the disclosures contained in the July 25th and August 3rd letters, are true.

## 1.    Information Provided By AUSA Greenberg.

AUSA Greenberg became involved in the investigation of Abdul-Latif on June 6, 2011, after learning that a plot to attack a military facility was ongoing.  Exhibit C at 4-5. On June 6th, AUSA Greenberg attended a meeting with several law enforcement officers involved in the investigation, including Det. DeJesus.  Exhibit C at 6.  At that meeting, AUSA Greenberg advised that the investigators should preserve all emails and text messages between the informant and the subjects of the investigation, and between the informant and law enforcement officers.  Exhibit C at 14-15, 81-82.  This was a brief comment made during a meeting that lasted roughly 90 minutes and involved about twelve people.  Exhibit C at 14-15, 81-82.  AUSA Greenberg does not recall any specific response to this comment, although it generally appeared to him that those in attendance

RESPONSE TO DEFENDANT'S EVIDENTIARY HEARING BRIEF - 5
*United States v. Abdul-Latif*, No. CR11-228JLR

UNITED STATES ATTORNEY
700 Stewart Avenue, Suite 5220
Seattle, Washington 98101
(206) 553-7970

heard the comment.  Exhibit C at 16-17, 52-53, 81-82.  Det. DeJesus was sitting at the opposite end of a long conference table from AUSA Greenberg.  Exhibit C at 81-82.

AUSA Greenberg believes that, during the period of the investigation leading up to Abdul-Latif's arrest on June 22, 2011, there were one or more other instances when he asked investigators to preserve their text messages with the informant, but he does not have a specific recollection about any of those instances.  Exhibit C at 11-12, 44-45.

During the discovery process, the prosecutors decided to gather SPD text messages directly from the SPD, rather than having FBI agents gather them from SPD and turn them over to the prosecutors.  Exhibit C at 55-56.  AUSA Dion was responsible for gathering that material from SPD.  Exhibit C at 58-59.  Nine text messages between Det. DeJesus and the informant were produced, and AUSA Greenberg did not learn that other text messages had existed until the defense raised the issue in July 2012 prior to filing the pending motions.  Exhibit C at 65-67.

## 2. Information Provided By AUSA Dion.

AUSA Dion had a brief, one-on-one conversation with Det. DeJesus about the need to preserve text messages with the informant.  Exhibit D at 4.  This conversation probably took place on June 9, 2011, at the FBI office, during a meeting attended by several people.  Exhibit D at 4-5.  AUSA Dion's best memory of the conversation is that he asked Det. DeJesus if he was communicating via text message with the informant, and Det. DeJesus said that he was.  Exhibit D at 6.  AUSA Dion then asked Det. DeJesus to preserve those text messages, and Det. DeJesus acknowledged the request in some way. Exhibit D at 6.

AUSA Dion believes that, at some point during the investigation, he also asked FBI Special Agents Via and Kelly to preserve their text messages with the informant, and that he gave them a general instruction to preserve all case-related written or recorded communications.  Exhibit D at 10-13.

After the investigation was over, AUSA Dion was responsible for gathering any text messages between SPD officers and the informant so that the texts could be reviewed

RESPONSE TO DEFENDANT'S EVIDENTIARY HEARING BRIEF - 6
*United States v. Abdul-Latif*, No. CR11-228JLR

UNITED STATES ATTORNEY
700 Stewart Avenue, Suite 5220
Seattle, Washington 98101
(206) 553-7970

1   as part of the discovery process.  Exhibit D at 27.  AUSA Dion obtained nine text

2   messages between Det. DeJesus and the informant, which were produced to the defense.

3   Exhibit D at 27-28.

4         On August 19, 2011, AUSA Dion e-mailed Det. DeJesus and asked whether there

5   were other text messages between him and the informant, besides the nine texts that

6   previously had been provided by SPD.  Exhibit D at 30.  Det. DeJesus answered that

7   those were all of the texts as far as he knew.  Exhibit D at 30.  AUSA Dion does not

8   believe that there was any follow-up to Det. DeJesus's response.  Exhibit D at 31-32.

9         On October 6, 2011, AUSA Dion again e-mailed Det. DeJesus and asked him to

10  preserve all written and recorded communications with the informant – including texts –

11  and to provide any such communications to the government.  Exhibit D at 35-36.  AUSA

12  Dion does not remember any response from Det. DeJesus.  Exhibit D at 36.

13  **III.    Discussion.**

14       **A.    The Court Should Deny the Defendant's Motion to Compel the
              Testimony of AUSAs Greenberg and Dion.**

15        The defendant moves this Court to compel both AUSA Greenberg and AUSA

16  Dion to testify as witnesses at the evidentiary hearing.  The defendant argues that the

17  AUSAs have relevant testimony to provide regarding three topics: (a) the instructions the

18  AUSAs provided to Det. DeJesus and other investigators regarding the need to preserve

19  text messages involving the informant; (b) the extent to which the federal government had

20  control over Det. DeJesus; and (c) the scope of the agency relationship between the

21  government and the informant.  *See* Defendant's Evidentiary Hearing Brief at 6, 9.  We

22  address these topics in turn.

23            **1.    Although the AUSAs Have Relevant Information to Provide
                    About their Instructions to Investigators to Preserve Text
24                   Messages, There is No Need For the AUSAs to Present Live
                    Testimony at the Evidentiary Hearing.**
25

26        Regarding the first issue – the AUSA's instructions to investigators about

27  preserving text messages – the government acknowledges that the AUSAs have

28  knowledge of facts that may be relevant to some of the issues before the Court.  As the

RESPONSE TO DEFENDANT'S EVIDENTIARY HEARING BRIEF - 7
*United States v. Abdul-Latif*, No. CR11-228JLR

defense points out, these facts may be relevant to the Court's determination of whether Det. DeJesus acted in "bad faith" when he deleted the text messages, because the concept of "bad faith" is rooted in whether the police actions were "in accord with their normal practice." *See* Defendant's Evidentiary Hearing Brief at 8.

In recognition of this, the government disclosed the facts contained in the July 25th and August 3rd letters, and subsequently made AUSAs Greenberg and Dion available for exhaustive defense interviews on this topic. As noted above, the government is willing to stipulate that the facts contained in the letters and the information provided by the AUSAs during the interviews are true. At this point, there is simply nothing else that the AUSAs can say on this topic, and therefore there is no reason for the Court to compel the AUSAs to testify at the evidentiary hearing.

Although the defendant has elected not to voluntarily accept the government's offer for a stipulation, it is within the Court's discretion whether or not to require the AUSAs to testify at the hearing or whether to admit the information by way of the stipulated letters and interview transcripts. "Whether an evidentiary hearing is appropriate rests in the reasoned discretion of the district court." *United States v. Wardlow,* 951 F.2d 1115, 1116 (9th Cir.1991) (quoting *United States v. Walczak,* 783 F.2d 852, 857 (9th Cir.1986)). An evidentiary hearing is only necessary to the extent that there are relevant factual disputes that must be resolved by the Court. *United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000). It is well settled that "[a]t a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial." *United States v. Raddatz*, 447 U.S. 667, 679 (1980).

In the instant case, it is appropriate for the Court to consider the AUSAs' information by way of the stipulated letters and interview transcripts. The defense has had an ample opportunity to question the AUSAs about all the relevant facts. Moreover, the defense is not contesting the substance of the information provided by the AUSAs, nor are they challenging the credibility of the AUSAs. On the contrary, the defense appears to enthusiastically endorse the AUSAs' information as it relates to the

1  instructions they provided to Det. DeJesus and other investigators to preserve text

2  messages with the informant.  *See* Defendant's Evidentiary Hearing Brief at 8 ("[O]ne of

3  the ways to demonstrate that Det. DeJesus acted in bad faith when he destroyed his text

4  message communications with the [informant] is to show that he did so in violation of

5  repeated directives from the AUSA").  Although the defense may elect to challenge the

6  credibility of other witnesses at the evidentiary hearing, it appears that they do not intend

7  to call into question the AUSAs' credibility.

8       This is an important point, because the Ninth Circuit has only found it to be an

9  abuse of discretion for a district court, at a suppression hearing, to admit information in

10 written form in lieu of live testimony where the credibility of witnesses was the key issue

11 at the evidentiary hearing.  For example, in *United States v. Mejia*, 69 F.3d 309, 314-19

12 (9th Cir. 1995), two law enforcement witnesses were unavailable on the day the district

13 court held an evidentiary hearing on a suppression motion.  The defendant requested a

14 one-day continuance so that he could present the witnesses' live testimony.  The district

15 court denied the continuance, and instead admitted transcripts of the witnesses' prior

16 testimony on the same subject matter.  The district court ultimately credited the testimony

17 of these police officers over the contradictory live testimony of the defendant.  The Ninth

18 Circuit found this to be an abuse of discretion because "the outcome of the suppression

19 hearing turned on the credibility of the witnesses."  *Id.* at 314.  Under the facts of *Mejia*,

20 the court of appeals held that "it was improper for the court to find the detectives'

21 testimony credible without viewing their demeanor" where the defendant challenged the

22 witness' credibility and provided contrary evidence through his own testimony.  *Id.*

23      The instant case is readily distinguishable from *Mejia*.  Unlike the situation

24 presented in *Mejia*, Abdul-Latif does not dispute that the AUSAs instructed Det. DeJesus

25 to preserve his text messages with the informant, and he is not challenging the credibility

26 of the AUSAs.  The Ninth Circuit has condoned the admission of hearsay testimony at a

27 pre-trial evidentiary hearing under similar circumstances.  *See United States v. Dorsey*,

28 418 F.3d 1038, 1044 (9th Cir. 2005) (admitting at suppression hearing, over defendant's

RESPONSE TO DEFENDANT'S EVIDENTIARY HEARING BRIEF - 9
*United States v. Abdul-Latif*, No. CR11-228JLR

objection, hearsay evidence in lieu of live testimony from a police officer; finding that
"[n]o goal would have been served by requiring Detective Potter to testify personally at
the suppression hearing" because "[t]here was no contention that Potter had not made the
statement and her credibility was not at issue. . ."), *overruled on other grounds by
Arizona v. Gant*, 556 U.S. 332, 343-44 (2009).  Therefore, it would be within the Court's
discretion to consider the proposed stipulation in lieu of live testimony from AUSAs
Greenberg and Dion.

> ### 2.      The AUSAs are Not "Witnesses" Regarding the Remaining Issues Raised by the Defense.

The defendant argues that the AUSAs are also "witnesses" with respect to two
other issues -- the extent to which the federal government had control over Det. DeJesus
and the scope of the agency relationship between the government and the informant.
Presumably, the facts relevant to these issues will include things such as: (a) whether Det.
DeJesus was assigned to the FBI's JTTF; (b) what Det. DeJesus' role was during the
investigation of Abdul-Latif; (c) who Det. DeJesus reported to in the law enforcement
chain-of-command; and (d) what instructions were provided to the informant regarding
the evidence on his cell phone.  AUSAs Greenberg and Dion have no unique factual
information to provide regarding any of these issues.[1]  Rather, it is the FBI agents and
SPD detectives who will be in a position to provide testimony related to these matters.
To the extent that the AUSAs answered questions related to these topics during the
witness interviews – which they did, contrary to the defendant's account – the
government has no objection to the Court considering that information.  But there is no
need for the AUSAs to provide further testimony on these topics at the hearing, given that
several law enforcement witnesses with more direct knowledge are available to testify
about these matters.

---

[1] For example, the AUSAs first spoke with the informant on July 17, 2012,
approximately one year after the informant "reset" his cell phone.  Exhibit C at 35-37.
And FBI agent was also present for this meeting and memorialized the discussion in a
report.

RESPONSE TO DEFENDANT'S EVIDENTIARY HEARING BRIEF - 10
*United States v. Abdul-Latif*, No. CR11-228JLR

UNITED STATES ATTORNEY
700 Stewart Avenue, Suite 5220
Seattle, Washington 98101
(206) 553-7970

**B.     If the Court Requires the AUSAs to Testify at the Hearing, the Court Should Permit the AUSAs to be Excepted from the FRE 615 Witness Exclusion Rule.**

If the Court denies the defendant's motion to compel the live testimony of AUSAs Greenberg and Dion, then the remaining issue raised by the defendant is moot.  That is, if the AUSAs are not witnesses at the evidentiary hearing, then FRE 615 would not be applicable to them and there is no further issue presented.  In the alternative, if the Court grants the motion to compel the AUSA's testimony, the government requests that the Court exempt the AUSAs from the witness sequestration rule so that the AUSAs, as the government's counsel of record, may be permitted to represent the government at the hearing and present the testimony of other witnesses.  As set forth below, it is within the discretion of the Court to allow this.

Under that scenario, the government would propose to conduct the evidentiary hearing in the following manner: The government (AUSAs Greenberg and Dion) would call on direct examination the informant and the law enforcement witnesses listed by the defense[2]; and the defense would have the opportunity to cross-examine each of these witnesses.[3]  After the testimony of the non-AUSA witnesses is completed, and if permitted by the Court, the defense would call AUSAs Greenberg and Dion to the stand; during this portion of the hearing, the government would be represented by AUSA Robert Westinghouse.

**1.     The Witness-Advocate Rule (RPC 3.8) Does Not Apply.**

Although the government's position is that the AUSAs should not be required to testify at the evidentiary hearing, we note that the possibility of the AUSAs performing in the dual role of both advocate and witness is not prohibited in this instance.  As conceded

---

[2]     Although the pending motions were filed by the defendant, the parties have agreed that the government will call the informant and the law enforcement witnesses on direct examination and the defendant will cross-examine the witnesses.

[3]     Although the defendant's latest filing includes SPD Detective Greg Tomlinson on the defense witness list, the parties had previously agreed that Det. Tomlinson's testimony is not necessary at the hearing.

RESPONSE TO DEFENDANT'S EVIDENTIARY HEARING BRIEF - 11
*United States v. Abdul-Latif*, No. CR11-228JLR

1    by the defendant (*See* Defendant's Evidentiary Hearing Brief at 3-4), the "witness-

2    advocate rule" codified in Rule 3.7 of the Washington Rules of Professional Conduct is

3    only applicable "at a trial," but does not govern during pre-trial proceedings.  RPC 3.7(a)

4    ("A lawyer shall not act as advocate *at a trial* in which the lawyer is likely to be a

5    necessary witness unless . . .") (emphasis added); *Caplan v. Braverman*, 786 F.Supp. 710,

6    711 (E.D. Pa. 1995) (Pennsylvania Rule 3.7 only applies "at a trial" and lawyer-witness

7    would be "permitted to represent Caplan and participate in all pre-trial and post-trial

8    matters"); *Fuller v. Whitehall-Robbins Healthcare*, C03-425BJR, 2006 WL 2473484

9    (W.D. Wa. 2006) (RPC 3.7 relates to testimony at trial, not at a pre-trial summary

10   judgment proceeding); *Microsoft Corporation v. Immersion Corporation*, C07-936RSM,

11   2008 WL 682246 (W.D. Wa. 2008) ("[T]he plain language of Washington RPC 3.7(a) is

12   unequivocally clear in only prohibiting attorneys from acting as an advocate *at trial.*")

13   (original emphasis).  *See also United States v. Edwards*, 154 F.3d 915, 921

14   (9th Cir. 1998) (noting the policy rationale underlying RPC 3.7 is to avoid confusion to

15   trial juries caused by the dual witness-advocate role).[4]

16                2.    **The Court has Discretion under FRE 615 to Exempt the AUSAs**
                        **From Sequestration.**

17

18         The defendant's motion is brought pursuant to FRE 615, which the defense

19   attempts to use in a manner that would effectively disqualify AUSAs Greenberg and Dion

20   _____

21        [4]  Although the Court need not reach this issue at the present time, we note that
     even if this matter arose in the context of a trial, RPC 3.7 would not compel the

22   disqualification of AUSAs Greenberg or Dion because neither would be a "necessary
     witness" at trial within the meaning of the rule, and because disqualification would result

23   in a substantial hardship for the government.  *See Public Utility Dist. No 1 of Klickitat
     County v. Int'l Ins. Co.*, 124 Wash. 2d 789, 811-12, 881 P.2d 1020 (1994) (courts should

24   be "reluctant to disqualify an attorney absent compelling circumstances"; holding that an
     attorney is only a "necessary witness" within the meaning of RPC 3.7 if his information is

25   "material to the determination of the issues being litigated" at trial and where the
     "evidence is unobtainable elsewhere").  Without belaboring the point here, the

26   government notes that the issues being litigated at the evidentiary hearing will be
     collateral matters at the trial, and to the extent any of the AUSAs' information is relevant

27   and admissible at trial, it will be "obtainable elsewhere" through a stipulation.  Moreover,
     RPC 3.7 would not disqualify the AUSAs in this case because their information is

28   uncontroverted, and thus it "relates to an uncontested issue."  RPC 3.7(a)(1) (exception to
     witness-advocate rule where attorney's "testimony relates to an uncontested issue").

1    from representing the government at the evidentiary hearing, even though RPC 3.7's

2    witness-advocate rule has no application here.  However, even if the AUSAs are

3    witnesses at the hearing, the Court has the discretion to exempt them from witness

4    sequestration under FRE 615.  Courts have applied Rule 615 flexibly and have reasonably

5    tailored the rule to fit unusual situations such as this one.

6         Rule 615 provides that, "[a]t a party's request, the court must order witnesses

7    excluded so that they cannot hear other witnesses' testimony."  FRE 615.  The rule itself

8    includes various exceptions to witness exclusion, allowing for certain types of witnesses

9    to remain in the courtroom, including parties, party representatives (*i.e.*, law enforcement

10   officers), and persons "whose presence a party shows to be essential to presenting the

11   party's claim or defense."  FRE 615(a)-(c).

12        The district court is given latitude to apply the exceptions codified in FRE 615 to

13   the particular circumstances of a case, and will only be reversed where there is an abuse

14   of discretion.  *See United States v. Valencia-Riascos*, 696 F.3d 938, 941 (9th Cir. 2012)

15   ("Generally, we review for abuse of discretion a district court's decision regarding

16   whether a witness should be excluded from the courtroom.") (*quoting Milicevic v.*

17   *Fletcher Jones Imps., Ltd.*, 402 F.3d 912, 915 (9th Cir. 2005)); *Seschillie*, 310 F.3d at

18   1213 n. 3 ("While the court is stripped of discretion and must order sequestration if a

19   party so requests and no Rule 615 exception applies, the decision as to *whether* a Rule

20   615 exception applies is reviewed for abuse of discretion.") (original emphasis) (*citing*

21   *Alexander Shokai v. Internal Revenue Service*, 34 F.3d 1480, 1486 (9th Cir. 1994)

22   (reviewing for abuse of discretion a district court's decision under Tax Court Rule 415,

23   which mirrors FRE 615, regarding the application of the third exception pertaining to

24   "essential presence" witnesses)).

25        "The purpose of this rule is to prevent witnesses from 'tailoring' their testimony to

26   that of earlier witnesses."  *United States v. Seschillie*, 310 F.3d 1208, 1212-13 (9th Cir.

27   2002).  The rule serves "to reduce the danger that a witness's testimony will be influenced

28   by hearing the testimony of other witnesses, and to increase the likelihood that the

RESPONSE TO DEFENDANT'S EVIDENTIARY HEARING BRIEF - 13
*United States v. Abdul-Latif*, No. CR11-228JLR

1  witness's testimony will be based on her own recollections." *United States v. Hobbs*,

2  31 F.3d 918, 921 (9th Cir. 1994) (*citing Perry v. Leeks*, 488 U.S. 272, 281-82 (1989)).

3  But where the concern of witness collusion or improper tailoring of testimony is not

4  present, the Ninth Circuit has condoned a more liberal application of FRE 615.  *See*

5  *Seschillie*, 310 F.3d at 1214 ("Rule 615 [] authorizes exclusion so that witnesses cannot

6  hear the testimony of other witnesses, not for other reasons"; finding abuse of discretion

7  where district court excluded essential defense expert because collusion was not a

8  concern) (citations and quotations omitted).

9       In the event that the Court requires AUSAs Greenberg and Dion to testify at the

10  evidentiary hearing, the government requests that the Court exempt them from Rule 615

11  sequestration pursuant to both the "party representative" exception to the rule

12  (FRE 615(b)) and the exception for persons "whose presence a party shows to be essential

13  to presenting the party's claim or defense" (FRE 615(c)).  The burden on the party

14  requesting the application of a Rule 615 exception is to make a "fair showing" that the

15  exception is necessary to the management of the party's case.  *Seschillie*, 310 F.3d at

16  1213.

17       The courts have applied these exceptions both individually and in combination to

18  exempt witnesses from sequestration in appropriate circumstances.  For example,

19  notwithstanding the express language of Rule 615(b)'s "party representative" exception,

20  which speaks in the singular ("an officer or employee of a party") and if strictly applied

21  would allow for only one designated "case agent" to sit at government counsel table

22  during a criminal prosecution, district courts have the flexibility to allow two or more law

23  enforcement representatives to remain in the courtroom.  *See, e.g. United States v. Green*,

24  293 F.3d 886, 892 (5th Cir. 2002) (affirming exemption of three law enforcement officers

25  under FRE 615(c) in a complex criminal case where the witnesses were from different

26  agencies and performed different functions during lengthy investigation); *United States v.*

27  *Lach*, 50 F.3d 17, 1995 WL 124323 (9th Cir. 1995) ("We have read this provision [] to

28  permit two individuals to represent a party at counsel table"; affirming district court's

RESPONSE TO DEFENDANT'S EVIDENTIARY HEARING BRIEF - 14
*United States v. Abdul-Latif*, No. CR11-228JLR

1    decision under Rule 615(b) to exempt two law enforcement agents from witness

2    sequestration) (*citing Breneman v. Kennecott Corp.*, 799 F.2d 470, 474 (9th Cir. 1986)

3    (same); *United States v. Alvarado*, 647 F.2d 537, 540 (5th Cir. 1981) (same); *United*

4    *States v. Spina*, 654 F.Supp. 94, 96 (S.D. Fla. 1987), *aff'd* 881 F.2d 1086 (11th Cir. 1989)

5    (same)).

6          Similarly, courts have applied Rule 615(c)'s exception for persons "whose

7    presence a party shows to be essential to presenting the party's claim or defense" to

8    exempt a variety of different types of witnesses from sequestration.  *See, e.g. Seschillie*,

9    310 F.3d at 1212-14 ("In many circumstances, a potential expert witness will be an

10   'essential party' within the meaning of Rule 615(3)"; holding that district court abused

11   discretion by excluding defense expert who was "essential" to preparing defense);

12   *Bahrani v. Conagra, Inc.*, 624 F.3d 1275, 1295-97 (10th Cir. 2010) (allowing non-party

13   witness who was closely affiliated with defendant to serve as party representative under

14   Rule 615 because the witness was particularly knowledgeable about the events in

15   question); *Siam v. Potter*, 2006 WL 1530155 (N.D. Cal. 2006) (allowing former Postal

16   Service employee to serve as party representative because witness had knowledge that

17   was central to the case).

18          The Ninth Circuit has affirmed the application of Rule 615(c)'s exception for

19   witnesses who are "essential to presenting the party's claim" in a situation analogous to

20   the facts of the instant case.  In *Milicevic*, 402 F.3d at 915-16, the defendant planned to

21   call plaintiff's attorney as a witness at trial, and moved to disqualify the attorney as trial

22   counsel and to exclude him from the courtroom under Rule 615.  The district court

23   declined to disqualify counsel, and exempted counsel from sequestration under Rule

24   615(c)'s exception, finding that as the long-standing representative for plaintiff his

25   presence at trial was essential.  *Id.* at 915.  The Ninth Circuit affirmed, holding: "Where a

26   particular trial counsel is 'essential to the presentation' of the client's cause, we agree

27   with the Eighth Circuit that Fed. R. Evid. 615(3) clearly would allow trial counsel to

28   remain present in the courtroom as an exception to the exclusionary rule for witnesses."

1  (*citing United States v. Reeder*, 614 F.2d 1179, 1186 (8th Cir. 1980) (noting that the RPC

2  would not necessarily prohibit counsel from serving as both a witness and an advocate,

3  and that if counsel were to be called as a witness, Rule 615(c) "clearly would allow

4  [counsel] to remain present in the courtroom as an exception to the exclusionary rule for

5  witnesses")).

6          In the instant case, the court would be well within its discretion to exempt AUSAs

7  Greenberg and Dion from witness exclusion under FRE 615.  As the long-standing

8  counsel for the government in this complex criminal case, the AUSAs are "essential to"

9  the government's presentation at the evidentiary hearing within the meaning of

10  Rule 615(c).  Moreover, there is no serious concern that exempting the AUSAs from

11  witness exclusion would lead to collusion or the tailoring of testimony to match that of

12  other witnesses.  This should go without saying, given that the AUSAs are federal

13  prosecutors and officers of the court.  But beyond that, the AUSAs are already "on

14  record" with their testimony in the form of the extensive defense interviews, so at this

15  point the tailoring of their testimony would be virtually impossible.  In addition, the

16  witnesses whose testimony is directly related to the AUSAs' information are all

17  professional law enforcement witnesses, making witness collusion and the tailoring of

18  testimony even less likely.  For all of these reasons, and because there are no other

19  "countervailing reasons" to sequester AUSA Greenberg and Dion, the court should

20  exercise its discretion to exempt them from Rule 615 witness sequestration in the event

21  that they are required to testify at the hearing.  *See Seschillie*, 310 F.3d at 1214 (finding

22  abuse of discretion in excluding defense expert witness, in part, because there were not

23  "any countervailing reasons to sequester" the witness).

24  **IV.     Government's Concerns Related to the Timing of the Evidentiary Hearing.**

25          As part of the defendant's motion, he requests the Court to order that "all

26  witnesses [including AUSAs Greenberg and Dion] be advised not to discuss their

27  testimony or the testimony of other witnesses until after the evidentiary hearing is

28  completed."  Defendant's Evidentiary Hearing Brief at 3.  While the motion is pending,

RESPONSE TO DEFENDANT'S EVIDENTIARY HEARING BRIEF - 16
*United States v. Abdul-Latif*, No. CR11-228JLR

1  AUSAs Greenberg and Dion intend to honor the defense request in this regard, so as to

2  avoid being in breach in the event the Court grants this aspect of the requested relief.

3  This obviously prohibits AUSAs Greenberg and Dion from meeting with the witnesses to

4  prepare them for their testimony at the evidentiary hearing.

5         We point this out for the purpose of alerting the Court and the defendant that,

6  depending on when the Court rules on the issues raised in the Defendant's Evidentiary

7  Hearing Brief, the government may need to request a continuance of the evidentiary

8  hearing, either in order to permit AUSAs Greenberg and Dion sufficient time to prepare

9  the witnesses for the hearing, or alternatively for another AUSA to become familiar with

10  the case and the issues presented and to prepare the witnesses.  The later situation, of

11  course, would require a significantly longer continuance of the hearing.

12  **V.    Conclusion.**

13         For the reasons set forth above, the government respectfully requests that the Court

14  deny the defendant's motion to compel the testimony of AUSAs Greenberg and Dion, or

15  in the alternative, that the Court deny the defendant's motion for sequestration of

16  witnesses as it pertains to AUSAs Greenberg and Dion.

17         DATED this 21st day of November, 2012.

18                                   Respectfully submitted,

19                                   JENNY A. DURKAN
                                 United States Attorney

20

21                                   /s Todd Greenberg

22                                   TODD GREENBERG
                                 MICHAEL DION

23                                   Assistant United States Attorneys
                                 United States Attorney's Office

24                                   700 Stewart Street, Suite 5220
                                 Seattle, Washington 98101-3903

25                                   Facsimile: 206-553-4440
                                 Phone: 206-553-2636

26                                   E-mail: Todd.Greenberg4@usdoj.gov

27

28

RESPONSE TO DEFENDANT'S EVIDENTIARY HEARING BRIEF - 17
*United States v. Abdul-Latif*, No. CR11-228JLR

UNITED STATES ATTORNEY
700 Stewart Avenue, Suite 5220
Seattle, Washington 98101
(206) 553-7970

1

## CERTIFICATE OF SERVICE

2

3          I hereby certify that on November 21, 2012, I electronically filed the foregoing

4   with the Clerk of Court using the CM/ECF system which will send notification of such

5   filing  to the attorney of record for the defendant.

6

7                                          s/Kiyomi Mathews
                                           KIYOMI MATHEWS
8                                          Legal Assistant
                                           United States Attorney's Office
9                                          700 Stewart Street, Suite 5220
                                           Seattle, Washington 98101-1271
10                                         Phone: 206/553-4228
                                           FAX:   206/553-0755
11                                         E-mail: kiyomi.mathews@usdoj.gov

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RESPONSE TO DEFENDANT'S EVIDENTIARY HEARING BRIEF - 18
*United States v. Abdul-Latif*, No. CR11-228JLR

UNITED STATES ATTORNEY
700 Stewart Avenue, Suite 5220
Seattle, Washington 98101
(206) 553-7970