ABU KHALID ABDUL-LATIF )
    PETITIONER )
)
VS. )
)
UNITED STATES OF AMERICA )
    RESPONDENT )

Case No. C13-1715JLR
SECOND AND SUCCESSIVE
MOTION REQUEST UNDER CR11-228JLR
2255(f)(4)

C14-1997JLR

## Petition To Seek Permission To File Second And Successive Motion Under 2255(f)(4)

Petitioner seeks permission based on new evidence recieved through legal means seeks permission to file Second and Successive petition to introduce New Evidence in order to get an Evidentiary Hearing, and the Plea Agreement voided. I assert that there will be no prejudice caused to the United States in this matter. This motion is timely under 2255(f)(4).

(1): My witness Faheem Saddiq was located on November 15, 2014 by my Investigator Spencer Milner, where upon, without coercion Mr. Saddiq agreed to speak with Mr. Milner. At this meeting Mr. Saddiq reveals statements by Childs that contradict what he told Police at the June 4, 2011 debrefing. For example, according to Mr. Saddiq states that "Robert Childs told him that he did not play any other part than he tried to talk Abdul-Latif out of it." But on June 4th he tells police on Page 6 lines 14-16, "So I pretty much played along with him, and afterwards when I had left him, I contacted a friend of mine who went to police." (Note: He never mentions the other friend to Mr. Saddiq). Next, Robert Childs said, "that he contacted law enforcement when it went too far, and felt that he could stop it." He never tells police that he ever tried to talk me out of anything in fact, he

said that he pretty much played along with him, then went to a friend who went to police. This was in a 4 day span between this meeting with me and the police. He clearly tells diffrent stories omitting information from the police and Mr. Saddiq, so who knows what the truth is being that the lies are obvious. No one coerced, manipulated him, bribed, threatened, or paid him to talk to Mr. Saddiq. He chose voluntarily to talk to him on his own for what reason, who knows. My investigator also has contact information for Mr. Saddiq, and has expressed interest in talking to me and Robert Childs again, so he should be willing to testify at an Evidentiary Hearing to get the whole story about that converstion between them.

(2): My Investigator also located a news article from on online newspaper called Earth First Journal which I first recieved on December 3, 2014 speaking about a Sexual Assault committed by Robert Childs on or around May 2012 where he was undercover on another job while I was still pretrial. Ms. Cowan comes out on her blog No Means No on June 13, 2013, and records the following facebook conversation with Childs:

Cowan: um after the 4th time I asked you to stop it does not matter, I do not trust you. If my life depends on it out there when life really gets thick with the revelution I know who not to count on.

Childs: "I admit to that, and I also asked you forgiveness. When you told me that you wanted me to bring things down a notch, I did, and I have you respect I ve told you before that I am not the best functioner when I am stoned." (High on drugs).

Cowan: Respect would never have tried to reach up my skirt

respect would not have coming up behind me at my house, and trapping me in a hug.. respect would have been stop touching my ass 3 fucking times in less than 10 minutes. Respect would have been not trying to grab my ass when I walked by you the first week at b.c. respect would have been letting me shut my door without forcing a fucking kiss.

According to a letter from the Government, Childs stated that the first priority in working for them was to "Make Amends" for his crimes, and money was secondary, but that has proven to be false as well. Just the fact that this happened during my Pretrial Phase, shoud, and would shock the conscience of a Jury of my peers as to whether I was Maliciously Entrapped or not.

(3): On April 15,2014 I recieved a letter from my attorneys office telling me the date of when my Co-Counsel Erik Levin and the Investigator traveled to Sacramento, CA which was July 28, 2011. Exactly 30 days after he tells FBI and Detective DeJesus that he told his wife about his role as a Source and not to give anyone information about him, which is why she would not talk to my legal team. This constitutes "Witness Tampering", and request that Joanna Zumwalt-Childs be presented at an evidentiary hearing by way of a subpoena in order to get the whole extent of what she was told by Robert Childs in order to get the full truth so I can prove that him and Robin "Jay" Jackson took it upon themselves to Entrap myself and Mr. Mujahid for pay.

It should also be noted that Robert Childs has also been documented to abuse drugs and alcohol, and as stated in the news article, as admits to it openly as well as the sexual assault.

There was no possible way for me to locate this information on my own for several reasons which some, the court are aware:

(1): I was detained in Isolation from June 2011 until I arrived in Florence, CO at May 2013, 2 months after sentencing in the District Court in Seattle, Washington on March 25, 2013.

(2): Because I was in Isolation, there was no access to the phone except 1 family phone call per month, and calls to my Attorneys, with no access to e-mail being in the SHU (Isolation Unit), my ability to communicate was very minimal to seek help.

(3): My Attorneys were misleading me as to their inability to locate Mr. Saddiq when he was in Washington during my whole Pretrial Phase as he is quoted in his November 15, 2014 meeting with Investigator Spencer Milner as saying "Between June 2011 and December 2012 that he was in Washington". (Note: Investigator Spencer Milner located him within 2 paid hours). Yet I pleaded with my Attorney Jennifer Wellman for 18 months, and claimed he couldn't be located as this court and the Government has said as well the same. According to 2255(f)(4) A 1 year period of limitation under this section shall apply to a motion when; " The date on which the facts supporting the claim could have been discovered through "Due Dilligence" which are the dates that I list in this motion and are also noted with the Exhibits attached. In Hasan v. Galaza 254 F.3d at 1154 (9th'01) when Hasan learned of a Romantic relatioship between a Juror and a Prosecution witness in another case after trial that the counsel's proper investigation would have uncovered, the case was Reversed and Remanded. As this court is aware, this Informant's credibility has always been a concern, but this exceeds what we could believe, and there is clearly no way I would have ever taken a Plea Agreement at

anytime, or at the time I agreed to the coerced deal for that matter with this new evidence. To succeed on a claim that counsel was ineffective in failing to call a favorable witness, a federal habeus petitioner must identify the witness, provide the testimony the witness would have given, show the witness was avaliable to testify, and would have given the Proffered Favorable Testimony, and demonstrate a reasonable probability that had such testimony been introduced, the jury would have reached a verdict more favorable to the Petitioner, Alcala v. Woodford, 334 F.3d 862,872 -73 (9th'03). Aclaim of Ineffective Assistance may be based on negligence in conducting Pretrial Investigation, U.S. v. Tucker 716 F.2d 576 (9th'83), Hines v. Enomoto 657 F.2d 667,676 (9th'81) Strickland v. Washington, 466 U.S. 668,686 104 S.ct. 2052,80 L.ed 2d 674 (84). Everything required from Alcala is in Exhibit 1.

With this new evidence avaliable to us along with everything else known, it would strongly bring reasonable doubt to my guilt, support my defenses of Entrapment, Derivitive Entrapment, and Outrageous Police Misconduct that I will show in the Court of Law. Therefore, Irequest the Honorable Court to grant me an Evidentiary Hearing, and Immediantely Void the current Plea Agreement that I was coerced into so I can have a chance to prove my case to a Jury of my peers, and in which there would be no Prejudice to the Government in this matter.

Moreover, I have shown cause by meeting the requirements to be reheard under 2255(f)(4), and respectfully request that my plea agreement be voided so that I can present my case with this new evidence at an Evidentiary Hearing at the Court's earliest convenience in the Interests of Justice.

DATED this 17th day of December 2014.

Respectfully Submitted,

*[signature]*
ABU KHALID ABDUL-LATIF
FEDERAL CORRECTIONAL CENTER
P.O. BOX 23811
TUCSON, AZ 85706

# EXHIBIT LIST

(1): Interview of Faheem Saddiq on November 15, 2014, with notes and quotes of his conversation with FBI/SPD Informant Robert Joe Childs. (Recieved on November 16, 2014) by Spencer Milner.

(2): News Article from Earth First Journal regarding Sexual Assault of Ms. Tawnee Cowan by Robert Joe Childs on or near May 2012 during the Pretrial Phase. (Recieved on December 3, 2014) by investigator Spencer Milner.

(3): Letter recieved by former Attorney Jennifer Wellman signed by Paralegal Brenda Hughes on April 15, 2014 informing me of the date that Erik Levin and the Investigator Attempted to interview Ms. Joanna Zumwalt on July 28, 2011 exactly 30 days after he admitted to Federal Investigators that he told his "estranged" wife about his role as a source, so that she would know not to give no one information about source which is evident that it was because of him that she refused to speak to my investigators which is Witness Tampering.

(4): Response to Motion to Vacate Sentence Page 9 Filed November 19, 2013 Lines 9-17 stating their belief that the witness Mr. Saddiq could not have been located for the reasons they listed on their brief.

(5): The section where Judge James Robart agrees with the Government that my witness could not be located as well with only "living somewhere in Everett, Being a D.O.C. Volunteer, and having a son who is serving time in state custody." See Robart decision on January 30, 2014 filed in the Ninth Circuit Court.

(6): Notes from June 4, 2011 meeting aforementioned in this motion.

TRULINCS 40739086 - ABDUL-LATIF, ABU KHALID - Unit: TCN-S-E

----

FROM: Milner, Spencer
TO: 40739086
SUBJECT: Payment Received
DATE: 11/16/2014 03:26:29 PM

Abdul,

I just met with your wife at the Mosque in Northgate.
Please read the following memo describing the relevant details of the interview between Faheem Saddiq and myself.
It's not looking like Faheem has the information we were hoping for, but call me at your earliest convenience and we will discuss the details and where to go from here.

-Spencer

----

Memorandum
To: Abdul Latif
From: Spencer Milner
Date: 11/15/2014
RE: Faheem Saddiq

I visited FAHEEM SADDIQ at his home in Washington State on November 15, 2014 at approximately 1:45 PM.
I introduced myself as SPENCER MILNER, a private investigator representing ABDUL LATIF.
FAHEEM SADDIQ was kind enough to invite me inside his home for an interview.

I told FAHEEM SADDIQ that ABDUL LATIF believes him to be a witness for his case and that CONFIDENTIAL INFORMANT ROBERT CHILDS confessed to FAHEEM SADDIQ that he "set ABDUL LATIF up."
I told FAHEEM SADDIQ that ABDUL LATIF requests an affidavit of the conversation between him and ROBERT CHILDS with contact information and five notarized copies. I told FAHEEM SADDIQ that ABDUL LATIF also requests that he testify at an evidentiary hearing.

FAHEEM SADDIQ claims that ROBERT CHILDS never confessed to setting up ABDUL LATIF.
ROBERT CHILDS told him that he did not play any part other than he tried to talk ABDUL LATIF out of it. ROBERT CHILDS said that he contacted law enforcement when it went too far and he no longer felt that he could stop it.

FAHEEM recalls asking ROBERT CHILDS why he would go to law enforcement rather than someone in the community that could help ABDUL LATIF.

"If ROBERT CHILDS was involved in the set up, he didn t tell me that. I can t put an affidavit of support. That would be a lie."

ABDUL LATIF requested over email that I deliver specific messages to FAHEEM SADDIQ. I showed FAHEEM SADDIQ the relevant email correspondence between myself and ABDUL LATIF, as requested.

I also asked FAHEEM SADDIQ where he was between June 2011 and December 2012. FAHEEM SADDIQ said that he was in Washington.

Faheem expressed interest in speaking with ABDUL LATIF. He provided his contact information (Listed below).

He also expressed interest in sitting down with ABDUL LATIF and ROBERT CHILDS to get the whole story from each of them.

FAHEEM SADDIQ
(425) 348-0392
END OF MEMO.

----

EXHIBIT 2

TRULINCS 40739086 - ABDUL-LATIF, ABU KHALID - Unit: TCN-S-E

----------------------------------------------------------------------------

FROM: Milner, Spencer
TO: 40739086
SUBJECT: News Article 2
DATE: 12/03/2014 09:20:03 PM

"It s Not the Saints Who Can Bring Us the Sinners": Sex Offender Outed as $90,000 Snitch in Pacific Northwest Activist Scene"

Earth First Journal

A repeat sex offender named Robert Joe Childs has been outed as an FBI and Seattle Police Department informant infiltrating activist groups in the Pacific Northwest, including Salish CIRCA. He has been reported seen in Portland, Oregon, and Puyallup, Washington.

While details about the cases of his sexual assault convictions are unknown at this time, Childs s sex offender status explains a few of the likelihoods: "[offenders] may not know their victim(s). The crime may show a manifest cruelty to the victim(s) and these offenders usually deny or minimize the crime."

Born around 1976, Robert Joe Childs led a relatively off-the-map until March 3, 1995. He was 22, and he had just been convicted of his first sexual assault: Rape in the Third Degree, in other words, forced, coercive sex. Two years later, he was convicted of his second and third offences: Child molestation in the third degree and failure to register as a sex offender.. Convicted for sexual assault again no more than four years later, Childs was just 25, and he had three felony sexual assault convictions in the span of just over six years. The next time we see Childs is just ten years later, and he is working for the FBI.

Childs allegedly came to the FBI in 2011 with information concerning a plan to attack Joint Base Lewis-McChord in Tacoma, Washington, using automatic rifles and grenades. Despite the fact that Childs is ranked as a Level 3 Sex Offender by the King County Sheriff s Office, meaning that he is "considered to have a high risk to re-offend" and has "clear indications of a personality disorder," the Seattle Police Department and FBI took him on as an informant (Note: We at the Journal do not conflate sex predation with "personality disorders," as the Sheriff seems to do).

In the words of US attorney Jenny Durkan, "It s not the saints who can bring us the sinners."

The defendants, Abdul-Latif and his would-be accomplice, Walli Mujahidh, both had histories of psychological challenges. One friend of the family, Dorothy Howard, referred to Mujahidh as a good natured, but gullible, person seeking treatment for his schizoaffective disorder. Abdul-Latif was suicidal, had hallucinations, and also sought treatment. Childs inserted himself into their lives like a cancer. Government records show that he stole thousands of dollars from Abdul-Latif, tried to romance his wife, and was big on sexual text messages in violation of his parole arrangement (he deleted messages from his phone to conceal this from his FBI handlers). For this, Childs was paid $90,000.

Childs agreed to provide M13 assault rifles, grenade launchers, and bulletproof vests. When the two came to Childs to inspect the weapons, they were arrested in a sting operation. Mujahidh received over 27 years in prison after pleading guilty, but Abdul-Latif pled not guilty and received an 18 year sentence after the judge revolted at the terrible interplay between the police and the informant. Seattle PD Detective Samuel DeJesus deleted over 400 text messages from Childs in spite of orders to the contrary. What was on those text messages? Was Childs openly entrapping Abdul-Latif? Bragging about sexual assault? Talking about previous FBI activity?

The Seattle Times reported that "Judge Robart criticized what he called the at-best sloppy destruction of potential evidence by an informant identified as Robert Childs, a five-times convicted sex offender and Seattle police Detective Samuel DeJesus [Childs handler], who deleted more than 400 text messages from [Childs and from his] cellphones, after he d been told to preserve them." Incidentally, the notion that Childs is a five-times convicted sex offender carries a new kind of weight, since records show he has three felony convictions and one non-felony for failure to register. Where did the other two convictions go? Possibly they occurred in another state? We can only speculate, or imagine that the Times got it wrong.

The next time we pick Childs up, he is again working undercover this time embedded in the Seattle-based activist group, Salish Salish Circa Rebel Clown Army (CIRCA). Formed around the May 1, 2012 demonstrations, CIRCA is a clown group based on Theater of the Oppressed principles. CIRCA seeks to parody social life in Seattle, and has appeared in numerous protests, from zoo protests to marches, and solidarity actions. "Our weapons are bubble wands, whistles, and high-pitched voices," declares CIRCA member Lewtenant Gonzo. "I only see it growing. Everybody s welcome to be a clown."

In the police hysteria over May Day actions that saw a minimal amount of property destruction, numerous activists have been

called before grand juries, and Childs positioned himself in a clown group likely to entrap the activists into "bigger plans." On June 13, 2013, a woman named Tawnee Cowan opened up to the public on her blog No Means No about her sexual confrontations with Childs, who was going by Robert Vincent or Sarg nt Yell r at the time (Childs s other aliases include Zechariah Childs, A.M. Khan, Ismail White, and Zech Zelli.).

Cowan writes, "[this] creep likes to troll coffee shops in search of young or new or pretty activists  he has a certain charm which is quite gross, so don t even waste your energy trying to humor him.. Watch out if he starts in about the spider bite, he will drop his pants in a heart beat  comando [sic], and shove the spot where the little scar is by his groin  if that is not enough, this lovely dude has been in Washington State Prison for 2.5 years for assault by his own admission shortly after he dropped his pants " If it is true that Childs spent only two and a half years behind bars for three sexual assault felonies, his record with the FBI becomes even more suspicious.

Cowan recorded the following facebook conversation with Childs:

Cowan: I do not care about words, I care about actions. I have seen enough of your actions to say I am done.
Childs: "The bottom of the barrel. I should be used to that[.] Very well, I will respect your request as I have before when you asked me to stop
Cowan: um  after the 4th time I asked you to stop it does not matter, I do not trust you. If my life depends on it out there when life gets really thick with the revolution I know who not to count on
Childs: "I admit to that, and I also asked you forgiveness. When you told me that you wanted me to bring things down a notch, I did, and I have you respect I ve told you before that I am not the best functioner [sic] when I m stoned"
Cowan: Respect would have never tried to reach up my skirt  respect would have not coming up behind me at my house and trapping me in a hug.. respect would have been stop touching my ass 3 fucking times in less than 10 minutes. Respect would have been not trying to grab my ass when I walked by you the first week at b.c. respect would have been letting me shut my door without forcing a fucking kiss.
According to Cowan, Childs was living on a house boat in Seattle at the time, and "He video tapes and audio tapes his boat and car (his friend Jon divulged that bit of info)  total sicko." In other words, Childs was not making a sincere attempt to hide the fact that he was blatantly and completely miked-up. This situation echoes the notorious miked-up cabin scenario, where an FBI informant going by the name of Ana used sexual advances to entrap a young activist named Eric McDavid, who is currently serving a 20-year sentence without having committed a single crime.

Childs explains, "This person admitted publicly & openly on FBook that he was charged & convicted 3 times in the state of WA (AND incarcerated). But neglected to include his Informant Status or his other 2 convictions!!

"He was last seen in the Portland[, Oregon,]-area.. Then recently in the Puyallup-area. He is reported to be traveling on a renovated school bus, possibly with a young female companion.

"He MAY have recently attended a NW Rainbow event and/or another music festival in Oregon. He MAY be attempting to infiltrate the Rainbow Family community. He may have altered his appearance again."

That the FBI has hired a three-time sex offender and drug user as an informant should come as no surprise in fact, it s basically standard practice. Alexandra Natapov writing for Prison Legal News explains, "informants often continue to commit crimes, while the information they provide is infamously unreliable. Taken together, these facts make snitching an important and problematic aspect of the way America does justice."

Be careful, folks, and spread the word about informants and perpetrators. We need to come together as a community to expose and ban these people. The activist community is inclusive, until it comes down to sexual assault and predation. One important reason to keep perpetrators out of our midst is that they are the type of people who often become or already are snitches.

EXHIBIT 3(a)

# FEDERAL PUBLIC DEFENDER
## Western District of Washington

April 15, 2014

**SPECIAL MAIL**
**ATTORNEY/CLIENT CORRESPONDENCE**
**OPEN ONLY IN PRESENCE OF INMATE**

Mr. Abu Khalid Abdul-Latif
Reg. No. 40739-086
FCI Tucson
PO Box 23811
Tucson, Arizona 85734

      Re:    *United States v. Abu Khalid Abdul-Latif*, CR 11-228 JLR

Dear Mr. Abdul-Latif:

This letter is to let you know that the investigator and Erik Levin traveled to interview Childs's ex-wife on <u>July 28, 2011</u>. *[handwritten: Disc P9 #1939 6/28/2011 interview]*

Thank you.

Sincerely,

*[signature]*

Jennifer E. Wellman
Asst. Federal Public Defender

JW/bh

1601 Fifth Avenue, Suite 700, Seattle, Washington 98101 - Telephone (206) 553-1100  Fax (206) 553-0120

EXHIBIT 3(b)

UNCLASSIFIED

| FD-209a | FEDERAL BUREAU OF INVESTIGATION |
| --- | --- |
| (07/24/2010) | CHS CONTACT REPORT |

## HEADER

Source ID: ███████
Date: 06/28/2011
Case Agent Name: Kelly, Albert C.
Field Office/Division: Seattle
Squad: CT1

## CONTACT REPORT

Date of Contact: 06/28/2011
List all present including yourself. (Do not include the CHS.): SA Albert C. Kelly III, SA Ethan A. Via, SPD Detective Samuel Dejesus
Type of Contact: In Person

Country: UNITED STATES
Address Line 1: 1110 Third Ave
Address Line 2:
Address Line 3:
City: Seattle
State: Washington
Zip/Postal Code: 98101

Anomalies: None.
Life Changes: ████████████████████
FBI investigative techniques/information revealed to source for operational purposes: None today.

*[handwritten: WITNESS TAMPERING!!]*

Other: Source was paid $400 today and it is anticipated that he/she will be paid more later in the week. Since the arrest of subjects, Source is alert that someone will deduce his/her identity and attempt to do him/her harm. Source told his/her estranged wife, Joanna Zumwalt-Childs of Sacramento California about his/her role as a source, so that she would know to give no one information about Source. Source was also concerned that subjects' brother or brother-in-law could find him/her. Source said a handful of other people could also know.

## PROGRAM(S) ADDRESSED IN THIS REPORT

HQ Division:
Program:
Subprogram:

## INTELLIGENCE REQUIREMENT(S) ADDRESSED IN THIS REPORT

Region:

Country:

National Intelligence Priorities Framework Requirements:

Substantive Case File Number:

001935

that the facts in the Plea Agreement were truthful. Because Abdul-Latif fails to establish prejudice as required by *Strickland*, this claim must fail.

### 2. Abdul-Latif's Claim that Counsel Failed to Locate a Witness.

Abdul-Latif next claims that he provided his attorneys with the name of a witness who allegedly had favorable information for the defense, and that his counsel failed to locate this witness prior to the guilty plea hearing. Abdul-Latif claims that this witness had information that the informant in this case "set him up." Motion at 7.

This claim fails for two reasons. First, Abdul-Latif cannot establish that his counsel's performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. It is clear from Abdul-Latif's motion that defense counsel did, in fact, make an effort to locate the witness, but was unable to find him. *See* Motion at 7 ("Ms. Wellman insisted she couldn't find him."). Without more, it cannot be said that counsel's failure to find the witness was unreasonable, especially because Abdul-Latif provided his counsel with only limited information to work with – the motion describes the witness as living somewhere in Everett, being a "DOC volunteer" at some unspecified place in Washington State, and having a son who is "serving time in state custody." Motion at 7. Under these circumstances, the fact that counsel was not able to find this person was not unreasonable under the *Strickland* standard.

Moreover, Abdul-Latif fails to establish that he suffered any prejudice from the alleged failure of counsel to find this witness. Abdul-Latif provides no reliable information – in the form of an affidavit or other documentation – to prove that this witness would have actually testified favorably for him. Without making such a showing, the defendant cannot establish prejudice here. It is telling that Abdul-Latif chose to enter a guilty plea in this case on December 6, 2012, knowing full well that the witness had not yet been located, rather than waiting to give his counsel an additional four months to locate the witness prior to the scheduled trial date of March 4, 2013. If this witness was truly so critical to his defense, Abdul-Latif certainly could have elected

Response to Motion to Vacate Sentence - 9
U.S. v. Abu Khalid Abdul-Latif (CR13-1715JLR)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

EXHIBIT 5

"Mr. Abdul-Latif provided his attorneys only a name and a description that the witness was a "DOC Volunteer" who lived in Everett, Washington, and had a son "serving time in state custody " (Mot. at 7) With nothing more to go on, it's not unreasonable that defense counsel was unable to locate the purportedly favorable witness."

THIS IS AN EXERPT FROM THE DECISION OF JUDGE JAMES L. ROBART RE. CASE# C13-1715JLR FROM JANUARY 30,2014 decided and filed. From Order denying 28 U.S.C. 2255 Motion.

1      MR. CHILDS:  Mm-hmm.

2      DETECTIVE DEJESUS:  The words he --

3      MR. CHILDS:  He used the term "people in green."

4  People -- he doesn't say necessarily army men or anything

5  like that, he just says "people in green."

6      DETECTIVE DEJESUS:  Okay.  And then you decided to --

7 *[May 3rd to June 3rd]* MR. CHILDS:  It had actually scared me.  Because, as I

8  said, once before I used to think that way, and it had

9  been a long time since I have actually thought like that.

10  And so when I heard it, it spooked me, one, because this

11  is a friend of mine who is talking like this, and it

12  brought up thoughts that I had, and it's like, wow, I

13  don't -- I don't know what to do with this.

14      So I pretty much just played along with him, and

15  afterwards when I had left him I contacted a friend of   *[contradicts Faheem Interview]*

16  mine who had contacted the federal --

17      DETECTIVE DEJESUS:  Okay.

18      MR. CHILDS:  -- investigators.

19      DETECTIVE DEJESUS:  Great.  Okay.  So -- and then we

20  met with you, and then we decided to investigate a little

21  bit further.

22      Last night I instructed you or asked you to talk to

23  Mr. Abdul-Latif and -- since you were going over to his

24  place.  Why don't you tell me what exactly occurred last

25  night.

*[handwritten margin note beside lines 14-16: "No cell calls. Friend told my PD's that Childs called him and he told him to go to cops. We know that's not true"]*

# Exhibit 6(b)

1  MR. CHILDS: Okay. I first sent him -- excuse me.

2  I sent him a text message and told him -- because he

3  had asked me to -- originally had asked me to look for

4  guns. And so I told him, "Let me test the waters and see

5  what I can find." So I told him I had a link and that I

6  would talk to him last night about it, that I didn't want

7  to talk over the phone.

8  DETECTIVE DEJESUS: Okay. Now, when you told him that

9  you had a link, was this because of our instruction or --

10  MR. CHILDS: Yes.

11  DETECTIVE DEJESUS: Okay. I just want to clarify that.

12  MR. CHILDS: So I went down and he met me outside. We

13  never went into his apartment, we were outside the whole

14  time. And he asked me, he is like, "Okay, I got your

15  text. What is it that you have?"

16  [handwritten: Why didn't he advise me that I shouldn't talk like this] And I told him that, "I have a brother who used to be a

17  gang member but is now a Muslim and" -- "but still has his

18  links to the street and can get us pretty much anything we

19  need." And I told him that I didn't get any prices for

20  the simple fact that I didn't have details of what we

21  wanted, et cetera. So we were talking about that and what

22  it is that we wanted.

23  <u>I kind of prodded him</u> to hear what his plan was, how he

24  wanted to do it, because I thought it was useless to just

25  go in there and randomly not have any points of interest

```
 1    or anything set in mind.  So he had -- he pretty much
 2    broke it down how he would like to do it all the way from
 3    purchasing the weapons, storing the weapons, training with
 4    the weapons, to making the attack.
 5         DETECTIVE DEJESUS:  Can you elaborate on that a little
 6    bit?
 7         MR. CHILDS:  Okay.  He said he has roughly $8- to $1200
 8    available.  He asked me how much I could come up with, and
 9    I told him I could probably -- by the end of the month I
10    could come up with about a thousand or so.
11         He said, "Okay.  That should be plenty, because I
12    looked online, and brand-new AKs only go for 900.  So if
13    we're getting street AKs, we can probably get them for 3-
14    or 400."
15         Excuse me.  So him, another individual out of Los
16    Angeles by the name of Walli and myself as -- the plan
17    is --
18         DETECTIVE DEJESUS:  How would you spell Walli?
19         MR. CHILDS:  W-A-L-I [sic].
20         DETECTIVE DEJESUS:  Okay.
21         MR. CHILDS:  He -- basically, Walli would be driving a
22    rental van, to go down and get a rental van, go to Fort
23    Lewis, have as much armor and as many clips --
24    large-capacity clips as possible, and maybe even high
25    explosive grenades.
```

1   feds have to catch up on you and then swoop in the day

2   before you get to go." So I --

3   SERGEANT ALLEN: Did he say anything that would lead

4   you to think that he knows other people locally besides

5   folks that we have spoken about already?

6   MR. CHILDS: No, I -- because I asked him that

7   specifically. I was like, "Do you" -- I was like, "You've

8   got me, Walli and yourself. Are there any other brothers

9   that we can pull in?"

10   And he had said, "No, I don't" -- he was like, "You

11   know, the less people we talk to the better. That way the

12   feds don't find out, somebody is going to snitch on us."

13   So he was like, "I know they are out there, but" --

14   because I was trying to, if you will, manipulate the

15   situation to where we would have a bigger group involved

16   in this, trying to tell him, you know, power in numbers.

17   And I -- and I -- it's like I know there is other

18   brothers that feel the same way, does he know any other

19   brothers? Meaning the guy Walli down in LA.

20   So as it stands, unless something changes between now

21   and the next time I talk to him, he feels that just us

22   three would be sufficient.

23   SERGEANT ALLEN: You mentioned that you used to think

24   the same way.

25   MR. CHILDS: Yes.

# CERTIFICATE OF SERVICE

FILED MAIL RECEIVED

DEC 23 2014

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY_____ DEPUTY

I, __ABU KHALID ABDUL LATIF__ hereby certify that I have served a true and correct copy of the following: A 2255(f)(4) motion on request for rehearing based on new evidence

Which is deemed filed at the time it was delivered to prison authorities for forwarding, Houston v. Lack, 101 L.Ed.2d 245 (1988), upon the defendant/defendants and or his attorney/attorneys of record, by placing same in a sealed, postage prepaid envelope addressed to:

ATTN: Bruce Rifkin: Clerk
James L. Robart: Judge

Court Clerk
700 Stewart Street
Seattle, WA 98101

and deposited same in the United States Mail at _____

I declare, under penalty of perjury (Title 28 U.S.C. §1746), that the foregoing is true and correct.

Dated this __17__ day of __December__, 2014.

_C.K. Abdul-Latif_

LEGAL        MAIL !!!

Mukhidi Abdullahi
F.C.I. Tucson
P.O. Box 23811
Tucson, AZ 85702

United States District Court
700 Stewart Street
Seattle, WA 98101

Stewart